[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13101

_____

D.C. Docket No. 4:18-cv-00029-HLM


THOMAS BRUCE HENLEY,

Plaintiff - Appellant,

versus

TODD PAYNE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 30, 2019)

Before WILLIAM PRYOR, MARTIN, and KATSAS,* Circuit Judges.

MARTIN, Circuit Judge:

_____

* Honorable Gregory G. Katsas, United States Circuit Judge for the District of Columbia
Circuit, sitting by designation.

Thomas Henley was arrested as he rode his bicycle through the grounds of the former Cloverleaf Elementary School and was charged with criminal trespass. Three weeks later he was released from jail. Then a few days after that, the trespass charge was dropped when Mr. Henley pled guilty to unrelated charges. This appeal requires us to decide whether Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), bars Mr. Henley's civil action for false arrest under 42 U.S.C. § 1983. Because Heck does not apply to Mr. Henley's case, the District Court's dismissal of his § 1983 claim must be vacated. Mr. Henley also brought several other state and federal claims against officers of the Bartow County Sherriff's Office. We vacate and remand the dismissal of his state false imprisonment claim against Deputy Payne but affirm the dismissal of his other claims.

## I.

A. FACTUAL BACKGROUND

In April 2015, Mr. Henley rented storage unit A-17 from the Cartersville Storage Company in Cartersville, Georgia. He was, at that time, homeless, and used the storage unit as temporary shelter.

On February 24, 2016, Mr. Henley was riding his bicycle along West Felton Road, heading toward his storage unit. Mr. Henley decided to take a shortcut through the property of the defunct Cloverleaf Elementary School. The school's property line was next to that of the storage facility, and Mr. Henley had taken this

2

shortcut on earlier occasions without incident.  He says there were no signs warning against trespassing on or around the school property, but there was a sign listing the property "for sale."

That evening, Deputy Todd Payne and at least four other deputies in the Bartow County Sheriff's Office were present on the school property.  Although Mr. Henley does not allege specifically why the deputies were present that night, he does allege, on information and belief, that the school was sometimes used for tactical training of Bartow County law enforcement personnel.

Mr. Henley entered the school property around 9:30 p.m.  Within 60 seconds of his entry onto the school property, he says he was "accosted and detained" by Deputy Payne and the other deputies and put into handcuffs.  Mr. Henley attempted to explain that he was trying to get to the storage facility and tried to show Deputy Payne a copy of the storage unit rental contract he kept in his backpack.  Another deputy allegedly told Mr. Henley, "we don't give a damn what [you're] doing here . . . this ain't your property!"

Mr. Henley was put under arrest and taken to the Bartow County Jail in Cartersville.  At 5:51 a.m. the next day, Deputy Payne executed a warrant for Mr. Henley's arrest charging him with misdemeanor criminal trespass in violation of O.C.G.A. § 16-7-21(b)(1).  The warrant states that Mr. Henley "did knowingly and without authority enter upon the [school] property without permission from [the]

3

owner for an unlawful purpose." Mr. Henley's bond was set at $5,000 despite his allegation, on information and belief, that the typical bond amount for a person charged with misdemeanor criminal trespass in Bartow County is $1,000.

Mr. Henley was held in police custody for 21 days. By his account, he experienced "extreme depression and mental anxiety" during his confinement. In 2006, Mr. Henley had been declared mentally disabled by a Social Security Administrative Law Judge ("ALJ"). The ALJ found that Mr. Henley had various impairments, including depression, anxiety, and post-traumatic stress disorder from having been attacked in prison during an earlier stay there.

On March 7, 2016, Mr. Henley sent a letter by certified mail to Clark Millsap, who was then and still is the Bartow County Sheriff. In the letter, Mr. Henley told Sheriff Millsap about the events leading up to the arrest as set forth in the complaint. He also informed Sheriff Millsap of the bond. Mr. Henley described himself as a "disabled, 58-year-old man" with a "long criminal history." He concluded his letter by asking Sheriff Millsap to "please help me with this." Mr. Henley says Sheriff Millsap took no action in response to the letter.

On March 17, 2016, Mr. Henley's mother paid a nonrefundable bond of $540 to free Henley from jail. On April 4, 2016, Mr. Henley again wrote to Sheriff Millsap, this time asking him to withdraw the trespassing warrant and reimburse his mother for the $540 bonding fee, plus $733 for his own lost Social Security

4

wages.  Mr. Henley hand-delivered the letter to Sheriff Millsap's office and requested that Millsap respond within ten days.  Sheriff Millsap did not respond or take any of the corrective actions Mr. Henley requested.

On March 22, 2016, Mr. Henley pled guilty to unrelated charges of marijuana possession and harassing phone calls that had been pending before his encounter with the officers on the school grounds.  Six days later, the trespass charge against Mr. Henley was dismissed "[p]ursuant to guilty plea in another case."  The state also entered a separate dismissal for several other unrelated charges.  Neither dismissal referenced the details of the guilty plea.

## B. PROCEDURAL HISTORY

Mr. Henley filed an application to proceed in forma pauperis before the District Court on February 5, 2018.  The District Court granted the motion and ordered that Mr. Henley's complaint and attachments be docketed for a frivolity review pursuant to 28 U.S.C. § 1915.

The complaint alleges the facts described above and asserts claims against Sheriff Millsap and Deputy Payne under 42 U.S.C. § 1983.  The complaint alleges that the officers deprived Mr. Henley of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Mr. Henley alleges that Deputy Payne committed the state tort (and criminal offense) of false

5

imprisonment, as well as malicious arrest.[1]  Mr. Henley also alleges both defendants "inflicted extreme depression and mental anxiety" on him, which the District Court later construed as a claim for intentional infliction of emotional distress ("IIED").  Mr. Henley alleges Sheriff Millsap displayed deliberate indifference when he failed to correct Deputy Payne's misconduct and failed to address the issues Henley raised in his March 7 letter about his excessive bail.  Mr. Henley also imputes to Sheriff Millsap "all of the unlawful and unconstitutional acts" allegedly committed by Deputy Payne.  He further asserts that Sheriff Millsap is liable for excessive bail in violation of Mr. Henley's rights under the Eighth Amendment.  Mr. Henley requests $540 to compensate him for the bonding fee, $1,000 in damages per defendant per day of his confinement, $5,000 in punitive damages per defendant, and $735 in lost Social Security benefits.

On February 7, 2018, the District Court dismissed all claims against Sheriff Millsap in his individual and official capacities, the Eighth Amendment excessive-bail claim against Deputy Payne, and all claims against Deputy Payne in his official capacity.  The court ruled that Mr. Henley failed to state viable § 1983

---

[1] Some linguistic clarification is needed.  We refer to the federal constitutional tort alleging warrantless arrest without probable cause as "false arrest."  The Georgia tort alleging detention without probable cause is "false imprisonment."  See O.C.G.A. § 51-7-20.  And the Georgia tort alleging unlawful arrest pursuant to a valid warrant is "malicious arrest."  See Garner v. Heilig-Meyers Furniture Co., 525 S.E.2d 145, 146–47 (Ga. Ct. App. 1999); see also O.C.G.A. § 51-7-1.

claims against Sheriff Millsap because Henley did not allege that Millsap "personally participated" in the purported unconstitutional actions. The court declined to impute the allegations against Deputy Payne to Sheriff Millsap because "supervisors are not subject to § 1983 liability under theories of respondeat superior or vicarious liability." The court similarly dismissed the state claims against Sheriff Millsap on the ground that Mr. Henley had not shown Millsap's personal participation in any of the alleged violations. Finally, the District Court dismissed all official capacity claims because the complaint failed to allege the existence of a policy, custom, or widespread practice on the part of Bartow County or that Bartow County waived its sovereign immunity.

The District Court did allow Mr. Henley to proceed on his § 1983 false arrest claim and his state claims of false imprisonment, malicious arrest, and IIED against Deputy Payne. Then on May 22, 2018, Deputy Payne moved to dismiss the remaining claims in the complaint. First, he argued that the § 1983 claim is barred by the favorable-termination rule of Heck v. Humphrey because Mr. Henley's trespass charge terminated pursuant to a plea agreement. Deputy Payne also asked the court to dismiss the state law claims on the grounds that malicious arrest under Georgia law requires a favorable termination, which Mr. Henley cannot show; Henley was detained pursuant to a warrant obtained the morning

7

after his arrest, thus defeating his claim of false imprisonment; and Henley's arrest was not "extreme or outrageous" so as to sustain his IIED claim.

The District Court granted Deputy Payne's motion to dismiss. The court agreed with the deputy that Mr. Henley's § 1983 claim was barred by Heck because Henley cannot show that the criminal trespass charge was terminated in his favor. The court stated that, having dismissed Mr. Henley's federal claims, it would not ordinarily exercise supplemental jurisdiction over the remaining state claims. The court also noted that Mr. Henley resides in Texas so "it is possible that diversity jurisdiction under 28 U.S.C. § 1332 may exist." The court then dismissed the state claims on the merits. This is Mr. Henley's timely appeal.

## II.

We review the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim de novo. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). We also review de novo questions of subject matter jurisdiction. City of Miami Gardens v. Wells Fargo & Co., 931 F.3d 1274, 1282 (11th Cir. 2019) (per curiam). For both, the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Dixon v. Hodges, 887 F.3d 1235, 1237 (11th Cir. 2018) (per curiam); Hill, 321 F.3d at 1335. "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys

8

and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

### III.

Mr. Henley's appeal requires us to address three broad categories of claims: his § 1983 claim against Deputy Payne; his state claims against Deputy Payne; and his § 1983 and state claims against Sheriff Millsap. We vacate the dismissal of Mr. Henley's claims of false arrest under § 1983 and false imprisonment under Georgia law against Deputy Payne. However, we affirm the dismissal of his other claims.

### A. SECTION 1983 CLAIM AGAINST DEPUTY PAYNE

Mr. Henley's only federal claim against Deputy Payne is that Payne violated Henley's rights under the Fourth Amendment by arresting him without probable cause. The District Court dismissed this claim as barred by Heck. We conclude to the contrary that Heck does not apply to Mr. Henley's allegations of unconstitutional false arrest, so we vacate the dismissal of this claim.

### 1. Whether Mr. Henley's § 1983 Claim Is Barred by Heck

In Heck, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487, 114 S. Ct. at 2372. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already

9

been invalidated." Id. This rule is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486, 114 S. Ct. at 2372. "By contrast, 'if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" Harden v. Pataki, 320 F.3d 1289, 1295 (11th Cir. 2003) (quoting Heck, 512 U.S. at 487, 114 S. Ct. at 2372–73).

Mr. Henley's § 1983 suit asserts that his Fourth Amendment rights were violated when he was arrested for criminal trespass on February 24, 2016. As recounted above, this trespass charge was dropped a month later when he pled guilty to wholly unrelated offenses. Deputy Payne claims it is meaningful that, on the road to having his criminal trespass charge dropped, Mr. Henley was convicted of possessing marijuana and making harassing phone calls. But in so arguing, Deputy Payne conflates Heck's favorable termination requirement with the "antecedent" question of "whether Heck applies at all." See McClish v. Nugent, 483 F.3d 1231, 1251 (11th Cir. 2007). It does not matter whether, as Deputy Payne argues, Mr. Henley was convicted of "any crime at all." Rather, the question is whether success on his § 1983 claim would necessarily imply the invalidity of one of his convictions.

10

Heck is intended to "foreclos[e] collateral attacks." Id. at 1250. In Mr. Henley's case, there is nothing to collaterally attack because the charge that forms the basis for his § 1983 claim was dismissed. And unlike the typical Heck case, Mr. Henley's § 1983 suit challenging his trespassing arrest does not "share a common element" with his state convictions for harassing phone calls and marijuana possession, which stem from wholly distinct incidents. See id. Because successful prosecution of Mr. Henley's § 1983 claim would not "necessarily imply that [his] criminal conviction[s]" for harassing phone calls or marijuana possession were "wrongful," Heck does not act as a bar. See id. (quoting Heck, 512 U.S. at 486 n.6).

The Tenth Circuit made a similar decision in Butler v. Compton, 482 F.3d 1277 (10th Cir. 2007). In Butler, the plaintiff brought a § 1983 false arrest claim alleging that a police officer entered the plaintiff's hotel room through deception and then arrested him without a warrant, charging him with burglary. See id. at 1278. The plaintiff later pled guilty to unrelated burglary charges, while the charges related to the incident with the officer were dismissed as part of the plea agreement. Id. The Tenth Circuit held that Heck did not bar the suit because, with respect to the dismissed charge that formed the basis of the § 1983 action, there was "no related underlying conviction . . . that could be invalidated" by the claim. Id. at 1280. We agree with our sister circuit: Heck has no application if the

11

plaintiff has not been convicted of an offense that derives from a common nucleus of operative fact with the offense underlying his § 1983 claim.

Deputy Payne argues that allowing Mr. Henley's § 1983 claim to proceed would "call into question the very basis for . . . the plea agreement." The record does not reflect—nor does Deputy Payne suggest—that the plea agreement was conditioned in such a way as to bar Mr. Henley from bringing this lawsuit. The trespass charge was not even discussed at Mr. Henley's plea hearing beyond a brief mention by defense counsel. The circumstances surrounding Mr. Henley's plea agreement do not bring Heck into play.

### 2. Whether Mr. Henley Asserts a Claim of False Arrest or Malicious Prosecution

The District Court did not reach the merits of Mr. Henley's § 1983 claim. Nevertheless, Deputy Payne asks us now to opine that Mr. Henley really asserts a claim for malicious prosecution, which, unlike a claim for false arrest, requires a plaintiff to allege malice and favorable termination of his criminal proceedings. See Uboh v. Reno, 141 F.3d 1000, 1004 (11th Cir. 1998). Because Henley's trespass charge did not terminate favorably, Deputy Payne argues we should affirm the District Court on alternative grounds. We decline to do so.

It is clear Mr. Henley brought a claim of false arrest when we examine how he presented his claim to the District Court and to us. When Mr. Henley filed this action, he complained about being "tak[en] . . . captive," "imprisoned," and

12

"restrained."  He alleged that Deputy Payne "arrest[ed] and imprison[ed]" him "without just or probable cause."  And he sought compensatory damages for his "illegal arrest and imprisonment."  Mr. Henley did not complain about any criminal prosecution, malicious or otherwise; indeed, the word "prosecution" never appears in his complaint.  It seems that Deputy Payne understands Mr. Henley's claim was for false arrest.  When Deputy Payne moved to dismiss the complaint, he described Mr. Henley's claim as a "section 1983 false arrest claim."  And the District Court likewise understood Mr. Henley to assert a "§ 1983 false arrest claim."  Finally, Mr. Henley expressly disclaimed reliance on a malicious-prosecution theory at oral argument.  Oral Argument Recording at 6:24–6:45 ("I never raised that claim . . . I never raised [malicious prosecution].  I raised false arrest.").

Because Mr. Henley never asserted a claim of malicious prosecution, Deputy Payne's argument that Henley must prove favorable termination is a nonstarter.  It does not matter for purposes of Mr. Henley's § 1983 claim whether he can prove that the trespass charge terminated favorably because the claim he brought does not require proof of favorable termination.

\* \* \*

Heck does not apply here because the plea agreement that led to the dismissal of Mr. Henley's trespass charge did not relate in any way to the incident

13

that led to that charge. Mr. Henley's success in arguing he was falsely arrested for trespassing in violation of his rights under the Fourth Amendment would not negate any element of his offenses of conviction—harassing phone calls and marijuana possession. The District Court was wrong to dismiss his § 1983 claim against Deputy Payne on Heck grounds and we vacate its order doing so.[2]

B. STATE CLAIMS AGAINST DEPUTY PAYNE

### 1. Jurisdiction

The District Court also dismissed Mr. Henley's state claims against Deputy Payne on the merits. Although the District Court referenced both federal diversity jurisdiction, 28 U.S.C. § 1332, and supplemental jurisdiction, id. § 1367, we read the decision as having exercised supplemental jurisdiction. The District Court noted "it is possible that diversity jurisdiction" may exist but the court did not mention § 1332(a)'s amount-in-controversy requirement. By contrast, the District Court did say it would "[o]rdinarily . . . decline to exercise supplemental jurisdiction," implying that it chose to exercise such jurisdiction in this instance. The District Court plainly had supplemental jurisdiction over the state claims

---

[2] We remand, rather than reverse, to allow the District Court to determine whether Deputy Payne acted with probable cause. See Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim. The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." (citation omitted)); see also id. at 1232 ("[O]fficers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest."). The District Court has not weighed in on this question and the parties did not raise it on appeal.

14

because the state and federal claims "derive from a common nucleus of operative fact." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966)). Mr. Henley does not argue that the District Court abused its discretion when it exercised supplemental jurisdiction over his state claims, so that is the end of our inquiry. We therefore proceed to the merits of Mr. Henley's state claims against Deputy Payne.

2. Merits

We affirm the dismissal of Mr. Henley's malicious arrest and IIED claims against Deputy Payne but vacate the dismissal of his false imprisonment claim.

*a. Malicious Arrest*

In Georgia, malicious arrest is "[a]n arrest under process of law, without probable cause, when made maliciously." O.C.G.A. § 51-7-1. When a claim of malicious arrest arises from an arrest for a criminal offense, the plaintiff must prove that the criminal proceeding, "whatever its extent," terminated in his favor. Garner, 525 S.E.2d at 147 (quotation marks omitted). Where, as here, the state dismisses a criminal charge based on a compromise agreement with the defendant, the charge does not terminate in the defendant's favor. Id. The District Court properly dismissed Mr. Henley's malicious arrest claim on this basis.

15

### b. IIED

In order to assert a claim of IIED under Georgia law, a plaintiff must allege that the defendant recklessly or intentionally engaged in extreme or outrageous conduct that caused the plaintiff severe emotional distress. McClendon v. Harper, 826 S.E.2d 412, 420 (Ga. Ct. App. 2019). The defendant's conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotation marks omitted). None of the conduct alleged by Mr. Henley rises to this level. As a result, we affirm the dismissal of this claim.

### c. False Imprisonment

"False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The District Court dismissed Mr. Henley's false imprisonment claim on the ground that his arrest "is considered to have been made under a warrant." This is partly correct. The Bartow County Sheriff's Office secured a warrant for Mr. Henley's arrest the morning of February 25, 2016. "Detention effectuated pursuant to procedurally valid process, such as an arrest warrant," does not give rise to a claim of false imprisonment. Stanford v. City of Manchester, 539 S.E.2d 845, 847 (Ga. Ct. App. 2000). As a result, Mr. Henley

16

cannot assert a claim of false imprisonment for any point after a valid arrest warrant against him was procured.

But Mr. Henley had already been in jail for several hours by the time the warrant was procured. Although the District Court held that this distinction did not matter—stating that, so long as an arrest warrant was procured at some point, a false imprisonment claim cannot lie—our reading of Georgia law suggests otherwise. In McClendon, police first arrested the plaintiff without a warrant and obtained a warrant the following day. 826 S.E.2d at 416–17. The Georgia Court of Appeals explained that the tort of false imprisonment governs cases in which "the alleged unlawful detention is premised upon an arrest by officers acting without a warrant," and it evaluated the plaintiff's claim of unlawful detention under that tort. Id. at 418. McClendon thus suggests that Georgia courts would allow a claim of false imprisonment for the time between Mr. Henley's initial arrest and the issuance of the warrant.

Because Mr. Henley alleges he was unlawfully detained for the time between his arrest and when his arrest warrant was procured, we vacate the dismissal of his false imprisonment claim.[3]

---

[3] We do not address the question whether the false-imprisonment claim can proceed if Deputy Payne had statutory authority—including probable cause—to arrest Mr. Henley. See O.C.G.A. § 17-4-20(a); Collins v. Sadlo, 306 S.E.2d 390, 392 (Ga. Ct. App. 1983). We note, however, that the burden is on the defendant to prove a warrantless arrest was lawful as a result of certain exigent circumstances listed in section 17-4-20(a) of the Georgia code. See Ferrell v. Mikula, 672 S.E.2d 7, 11 (Ga. Ct. App. 2008). Deputy Payne did not assert this defense before

## C. CLAIMS AGAINST SHERIFF MILLSAP

Finally, we turn to the claims against Sheriff Millsap.  Unlike the claims against Deputy Payne, which were dismissed on a motion to dismiss, the District Court sua sponte dismissed the claims against Sheriff Millsap.  Although the dismissal of these claims occurred pursuant to a screening for frivolity, the District Court acted under 28 U.S.C. § 1915(e)(2)(B)(ii), which requires a court to dismiss a case "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  A district court's sua sponte dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) is reviewed de novo, viewing the allegations in the complaint as true.  Hughes v. Lott, 350 F.3d 1157, 1159–60 (11th Cir. 2003).  We apply the standards of Rule 12(b)(6) in reviewing dismissals under § 1915(e)(2)(B)(ii).  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).

We affirm the District Court's decision to dismiss the claims against Sheriff Millsap pursuant to its § 1915 authority.

### 1. Federal Claims

#### a. False Arrest

The District Court properly construed Mr. Henley's complaint as alleging that Sheriff Millsap is liable under § 1983 for false arrest on a theory of

---

the District Court or before our Court, so we remand for the District Court to determine whether Mr. Henley has stated a claim for false imprisonment.

18

supervisory liability.  Mr. Henley's first contact with Sheriff Millsap was after Henley had been in jail for over a week.  While Mr. Henley may have at this point "notifi[ed]" Sheriff Millsap about what Henley viewed as his false arrest, Millsap was not involved in the commission of that tort, which is alleged to have occurred at the time of arrest.  Mr. Henley's brief makes the point that an officer evaluating probable cause may not disregard evidence, but he does not allege Sheriff Millsap played a role in the probable cause determination.

Supervisory liability under § 1983 "must be based on something more than the theory of respondeat superior."  Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).  "[A]bsent allegations of personal participation . . . supervisory liability is permissible only if there is a causal connection between a supervisor's actions and the alleged constitutional violation."  Piazza v. Jefferson County, 923 F.3d 947, 957 (11th Cir. 2019) (quotation marks omitted).  One way of proving the requisite causal connection is to demonstrate that the supervisor's "policy or custom resulted in deliberate indifference to constitutional rights."  Id. (quotation marks omitted).  A plaintiff can only allege the existence of a policy or custom by "point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee."  Id. (citation omitted).  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  Braddy, 133 F.3d at 802.

19

Mr. Henley's § 1983 claim against Sheriff Millsap fails because he has not alleged that Deputy Payne carried out the purportedly unconstitutional arrest pursuant to a policy or custom of the Bartow County Sheriff's Office.  Mr. Henley does not seem to dispute this.  Rather, he says Sheriff Millsap can be held liable because he received a letter from Mr. Henley putting him on notice of Deputy Payne's unconstitutional conduct.  But this has nothing to do with the question of whether an unconstitutional false arrest was carried out.  See Keith v. DeKalb County, 749 F.3d 1034, 1047–48 (11th Cir. 2014) (requiring a causal connection "between the supervisor's actions and the alleged constitutional violation" (emphasis added)).  Because Mr. Henley has not plausibly alleged that Sheriff Millsap instituted a policy or custom that caused Henley to be detained, the District Court properly dismissed his false arrest claim for supervisory liability against Millsap.

### b.  Excessive Bail

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  A § 1983 claim for excessive bail in violation of the Eighth Amendment may lie against the supervisory official who set the bail if the plaintiff alleges that the terms of release are not "designed to ensure a compelling interest of the government."  See Campbell v. Johnson, 586 F.3d 835, 842–43 (11th Cir.

20

2009) (per curiam).  The ordinary remedy for excessive bail is a state habeas corpus action.  See Jones v. Grimes, 134 S.E.2d 790, 792 (Ga. 1964).

Mr. Henley's complaint does not allege Sheriff Millsap was involved in setting his bail or that he had any discretion to alter it.  As with Mr. Henley's § 1983 false arrest action against Sheriff Millsap, Millsap can therefore only be held liable under a theory of supervisory liability.  Because there is no allegation that Mr. Henley's bail was set pursuant to an official policy, the District Court properly dismissed Henley's Eighth Amendment claim against Sheriff Millsap.[4] See Walker v. City of Calhoun, 901 F.3d 1245, 1255 (11th Cir. 2018).

2.  State Claims

The District Court also properly dismissed Mr. Henley's state claims against Sheriff Millsap.

First, it is easy to conclude that Sheriff Millsap cannot be held liable for malicious arrest under O.C.G.A. § 51-7-1.  Liability under section 51-7-1 requires finding that the defendant participated in the plaintiff's arrest.  See Jackson v. Norton, 44 S.E.2d 269, 272 (Ga. Ct. App. 1947).  And we know that Sheriff

---

[4] The District Court also construed the complaint as alleging an excessive bail claim against Deputy Payne, which it dismissed at the frivolity stage.  Regardless of whether Mr. Henley's complaint does allege such a claim against Deputy Payne, Henley's briefing before this Court focused on his excessive bail claim against Sheriff Millsap, so we need not consider the equivalent claim against Payne.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).

21

Millsap was not involved in the decision to arrest Mr. Henley, nor was the arrest carried out as the result of a policy made by Millsap.  In addition, as discussed above, Mr. Henley cannot show that his criminal proceeding terminated in his favor.  See Garner, 525 S.E.2d at 147.

Second, the District Court was correct to hold that Sheriff Millsap is not liable for false imprisonment under O.C.G.A. § 51-7-20.  Mr. Henley's only basis for holding Sheriff Millsap responsible for his alleged false imprisonment is a letter Henley sent to Millsap on March 7, 2016, which Henley argues put Millsap on notice of "the ongoing false imprisonment."  But by the time Sheriff Millsap received the letter, Henley was detained pursuant to a procedurally valid arrest warrant, thus defeating his claim for false imprisonment.  See Stanford, 539 S.E.2d at 847.

Finally, the District Court did not give any reasons for dismissing the IIED claim against Sheriff Millsap.  Nevertheless, this Court may affirm on any basis in the record, regardless of whether the District Court actually relied upon that basis in dismissing the plaintiff's claim.  Harris v. United Auto. Ins. Grp., Inc., 579 F.3d 1227, 1232 (11th Cir. 2009) (per curiam).  Much as Mr. Henley's complaint does not allege that Deputy Payne's conduct was so extreme as to give rise to a claim for IIED, so too does his complaint fail to allege that Sheriff Millsap's refusal to release him from jail met this high standard.

22

**IV.**

The District Court erred by dismissing Mr. Henley's § 1983 false arrest claim and Georgia false imprisonment claim against Deputy Payne.  As a result, we vacate the dismissal of these claims and remand for further proceedings consistent with this opinion.  We otherwise affirm the District Court.

**VACATED AND REMANDED IN PART, AFFIRMED IN PART.**