[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11611

Non-Argument Calendar

_____

TRACIE MITCHEM-GREEN,

Plaintiff-Appellant,

*versus*

MHM HEALTH PROFESSIONALS INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-00054-BJD-PDB

_____

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Tracie Mitchem-Green, an African-American woman, filed a lawsuit in state court against her former employer, MHM Health Professionals, LLC, ("MHM"), f/k/a MHM Health Professionals, Inc., raising claims of race and sex discrimination and retaliation under Florida state law. MHM removed the action to federal court based on diversity jurisdiction and then moved for summary judgment, which the district court granted. On appeal, Mitchem-Green contends that MHM treated her worse than similarly situated non-female, non-African-American employees, and retaliated against her for reporting allegations of inmate abuse. After careful review of the record and the parties' briefs, we affirm the grant of summary judgment in favor of MHM.

## I.

We review summary-judgment decisions *de novo*, "viewing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). To defeat a summary-judgment motion, the plaintiff must show the record contains sufficient evidence for a reasonable jury to return a verdict in her favor. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*); *see* Fed. R. Civ. P. 56(a). We may affirm on any ground supported by the record. *Henley v. Payne*, 945 F.3d 1320, 1333 (11th Cir. 2019).

## II.

Mitchem-Green holds a doctoral degree in nursing. From January to September of 2017, she worked as an Advanced Registered Nurse Practitioner ("ARNP") at Suwannee Correctional Institution. She was employed by MHM, a staffing subcontractor of Centurion of Florida, LLC, which provided medical care in Florida Department of Corrections ("FDOC") facilities.

During her employment, Mitchem-Green was the sole ARNP at Suwannee. Her job duties included the evaluation and treatment of inmate patients under the supervision of a physician and in conjunction with other medical staff. She worked with and was supervised by two medical doctors, Dr. Alexis Figueroa and Dr. Denis Vilchez, alongside various nursing staff. Medical services at Suwannee were overseen by Dr. Errol Campbell, the Regional Medical Director. The nurses, including Mitchem-Green, reported to the Director of Nursing.

Undisputed evidence reflects that Mitchem-Green did not meet MHM's expectations for productivity, time management, and following instructions. MHM expected Mitchem-Green to see up to thirty patients per day, spending no more than fifteen minutes with each patient, regardless of the severity or complexity of the patient's particular health issues. Mitchem-Green regularly was well below that mark. For example, from July 18, 2017, through August 31, 2017, she averaged 4.23 patient encounters per day. MHM also expected Mitchem-Green to work where and when she was scheduled. But the record contains numerous

instances where MHM management discussed with Mitchem-Green concerns that she was not working her scheduled hours, was not in her scheduled location, or was spending an inordinate amount of time with a particular inmate, causing prison staff to question whether the relationship was professionally appropriate. For instance, Mitchem-Green was observed on several occasions visiting that inmate outside normal workings hours. As a result of these concerns, Dr. Campbell instructed Mitchem-Green in early June 2017 to discontinue care of the patient at issue and restricted her access to the infirmary.

Mitchem-Green does not dispute she failed to meet MHM's expectations for patient encounters, but she asserts that it was impossible to meet her workload without additional support. She says she was not provided reliable nursing assistance or an office like Dr. Figueroa and Dr. Vilchez, despite multiple requests. She also maintains that the amount of time she spent with patients was necessary to meet professional and constitutional standards. She states that the specific inmate at issue had many medical problems and so required additional time. And she contends that MHM's issues with her performance and scheduling arose only after she began objecting to substandard patient care and inmate abuse.

On July 11, 2017, Mitchem-Green was called to a meeting with MHM management and Warden Marvin Clemmons. During this meeting, the Warden raised several concerns about Mitchem-Green's performance and productivity. He advised that her productivity—seeing only three or four patients per day—was not

sufficient and was leading to missed appointments and complaints by inmates who were not being seen. The Warden also expressed concern that Mitchem-Green had violated safety protocols by failing to turn in her keys at the end of the workday. After the meeting, Mitchem-Green emailed the Warden, attributing her low productivity to the lack of nursing assistance and raising issues regarding substandard care of inmates. In response, the Warden advised that she "need[ed] to address any concerns . . . with nursing performance" with MHM. But, the Warden continued, if she "observed a procedural violation or safety concern, [she] should immediately prepare an incident report and forward [it] to [his] office for review."

Two weeks after this meeting, according to an email from Dr. Campbell to Mitchem-Green, Mitchem-Green's productivity was still "very low." Among other things, Dr. Campbell stated, "As discussed please adhere to the normal work hours during which patients can be seen. It is also required that you are present in the appropriate area assigned at the correct time to see patients. On multiple occasions, I have reviewed with you the need to improve your productivity which is very low. Please make every effort to improve the number of patients seen daily."

On August 29, 2017, Mitchem-Green wrote a physician's order to "notify OIC re: alleged staff abuse," after an inmate alleged staff abuse. She did not submit an incident report, despite the Warden's prior instruction to do so. Instead, two days later, on August 31, she contacted the local Sheriff's Office to report that inmates

were being abused and mistreated at Suwanee. Within hours of her report, Warden Clemmons revoked her access privileges to the prison and MHM suspended her at the Warden's request. The Warden testified that the proper way to report inmate abuse was through an incident report, which would be forwarded to the Office of Inspector General. Dr. Campbell informed the Warden that he had investigated the allegations and found them to be without support.

After being informed of her suspension, Mitchem-Green was escorted to her locker by Diane Parrish, MHM's Health Services Administrator, to retrieve any personal items. In Mitchem-Green's locker, according to Parrish, were "a lot" of medical records for two particular inmates, including the inmate with whom Mitchem-Green was suspected of having an inappropriate relationship. Parrish testified it was "unheard of" to store medical records in a locker, while Dr. Campbell testified that the policy was "for medical records to be returned to the medical records department at the end of each day." Mitchem-Green, for her part, testified that her locker was the most secure location she could store records because she lacked an office, and that she was not aware of any prohibition on keeping records in her secured locker.

MHM terminated Mitchem-Green's employment on September 21, 2017. The termination paperwork reflects that Mitchem-Green was fired for violating policies relating to the storage of protected health information. Campbell testified the decision to terminate was also influenced by Mitchem-Green's

consistently low productivity and her repeated failure to follow the directions of her supervisors.

## III.

We start with Mitchem-Green's claims for race and sex discrimination. The Florida Civil Rights Act ("FCRA") prohibits an employer from discriminating against or discharging any individual because of that individual's race or sex. Fla. Stat. § 760.10(1)(a). Because the FCRA is modeled after Title VII, "claims brought under it are analyzed under the same framework." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

At bottom, Mitchem-Green bears the burden of presenting sufficient "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011). To meet that burden, Mitchem-Green asserts that MHM "blatantly treated Mitchem-Green differently than male non-black employees," specifically Dr. Figueroa and Dr. Vilchez. She asserts that, in contrast to these two doctors, she lacked an office or a nursing assistant, she was excluded from certain meetings the doctors were invited to, and she was prevented from performing her duties in certain areas.

When a plaintiff seeks to prove discrimination with evidence that a similarly situated employee outside her protected class was treated more favorably than herself, she must show that the comparator was "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1226–27 (11th Cir. 2019) (en

banc).  A valid comparator ordinarily is someone who engaged in the same basic conduct as the plaintiff, who was subject to the same employment policies and decisionmaker, and who shared the plaintiff's employment or disciplinary history.  *Id.* at 1227–28.

Here, the district court properly granted summary judgment because the evidence, even in the light most favorable to Mitchem-Green, does not support a reasonable inference that her suspension and termination were motivated by her race or sex.

Dr. Figueroa and Dr. Vilchez are not valid comparators.  For starters, they held different positions with MHM than Mitchem-Green.  They are medical doctors; Mitchem-Green is not.  While Mitchem-Green testified that the doctors performed many of the same job duties as she did, she acknowledged that the doctors had responsibilities she did not have.  Chief among those was supervision of the nursing staff, including Mitchem-Green, an ARNP.  According to Mitchem-Green's job description, she "[w]ork[ed] under the supervision of a physician . . . and [was] responsible for assisting in the delivery of health care."  And the record contains numerous emails where Mitchem-Green acknowledged that Dr. Figueroa and Dr. Vilchez had supervisory authority over her.  Given the doctors' materially different positions and job duties, no inference of discrimination can be drawn from MHM's decision to provide offices and nursing assistants to the doctors but not to Mitchem-Green, or to exclude her from certain provider meetings.

Nor did Mitchem-Green present any evidence that the doctors engaged in any of the same conduct or misconduct that she

did, which led to restrictions on her job duties and her eventual suspension and termination. Undisputed record evidence reflects that, in the months preceding her termination, Mitchem-Green was repeatedly reproached for her low productivity and her failure to follow instructions as to where and when she was scheduled to work, that she was suspected of having an inappropriate relationship with an inmate, and that she kept medical records for that inmate in her locker after being barred by Dr. Campbell from providing care to the inmate. There is no evidence of even remotely comparable conduct by Dr. Figueroa and Dr. Vilchez.

For these reasons, Mitchem-Green's two proffered comparators are not similarly situated in all material respects. *See Lewis*, 918 F.3d at 1226–28. And she presents no other evidence suggestive of discriminatory intent or pretext in MHM's explanation of its actions. Accordingly, she has not created a genuine issue of material fact regarding whether her suspension and termination were motivated by her race or sex.

## IV.

Next, we consider the retaliation claims, which Mitchem-Green brings under both the FCRA and Florida's Whistleblower's Act ("FWA"). As relevant here, the FCRA prohibits employers from retaliating against employees for opposing practices made unlawful by the FCRA. Fla. Stat. § 760.10(7). The FWA prohibits employer retaliation for, among other things, "[o]bject[ing] to, or refus[ing] to participate in, any activity, policy, or practice of the

employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102.

To set forth a claim of retaliation under both the FCRA and the FWA, a plaintiff must first establish a *prima facie* case by showing that (i) she engaged in statutorily protected activity, (ii) she suffered a materially adverse action, and (iii) some causal relationship exists between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132–33 (Fla. Dist. Ct. App. 2003) (applying Title VII elements to FWA claim).

If a plaintiff establishes a *prima facie* case of retaliation, and the employer articulates a legitimate, non-retaliatory reason for the challenged employment action, then, under both the FCRA and FWA, the plaintiff must present evidence that the reason provided by the employer is a pretext for prohibited retaliatory conduct. *Goldsmith*, 513 F.3d at 1277; *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 813–14 (Fla. Dist. Ct. App. 2020) (applying burden-shifting framework to FWA claim). A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, even if we assume *arguendo* that Mitchem-Green established a *prima facie* claim of retaliation, we agree with the district court that she failed to create a triable issue of fact about

retaliation.[1]  MHM supplied legitimate reasons for suspending and firing her, and she failed to show either that these reasons were false or that retaliation was the real reason.  *See id.*

Mitchem-Green has not shown that the asserted reason for her suspension—her failure to follow FDOC policy in reporting the inmate abuse allegations—was false.  The record shows that Warden Clemmons had previously instructed her to submit an incident report for any inmate-abuse allegations so that they could be reviewed and investigated.  But Mitchem-Green ignored these instructions and did not file an incident report before reporting the allegations to the Sheriff's Office.  What's more, that failure to follow instructions was not an isolated incident, but rather was consistent with a well-established pattern of similar conduct, such as repeatedly failing to work where and when she was scheduled.

Likewise, Mitchem-Green has not established any basis in the record to suspect that MHM's reasons for terminating her employment were a pretext for unlawful retaliation.  She again claims that she was treated differently than similarly situated comparators.  But that argument fails for the same reasons as it did for the discrimination claims, as we discussed above.  She questions why MHM treated a secure locker differently than a secure office when

---

[1] Because we assume that Mitchem-Green established a *prima facie* case of retaliation, we need not consider her arguments that the district court erred at that stage of the analysis by finding that she did not engage in protected activity or show a causal connection between her activity and her suspension and termination.

it comes to storage of medical records, but she fails to address that she possessed medical records for a patient whom she had been barred from treating, and therefore had no legitimate basis to possess the records at all.  Nor is it "our role to second-guess the wisdom of an employer's business decisions."  *Alvarez*, 610 F.3d at 1266.  More broadly, undisputed evidence reflects that Mitchem-Green did not meet MHM's expectations for productivity, time management, or following the instructions of supervisors.

## V.

For these reasons, Mitchem-Green has not created a genuine issue of material fact regarding whether her suspension and termination were motivated by discriminatory or retaliatory animus. We therefore affirm the district court's grant of summary judgment to MHM.

**AFFIRMED.**