[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12622

Non-Argument Calendar

_____

CHRISTOPHER SANDERS,

Plaintiff-Appellant,

*versus*

BRIAN STARLING,
In his individual capacity,
SEAN FOGARTY,
In his individual capacity,
LIEUTENANT WOODS,
In his or her individual capacity,
CRYSTAL WAITE,
BRYAN ALLEN,
In his individual capacity, et al.,

2                    Opinion of the Court                    21-12622

Defendants-Appellees,

CARRIE REED, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cv-00430-MMH-JBT

_____

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Christopher Sanders, a Florida prisoner proceeding pro se, appeals the district court's dismissal of his complaint against two prison nurses, Crystal Waite and Sharron Braziel-Marshall. He alleges that both nurses violated the Eighth Amendment by subjecting him to cruel and unusual punishment, and that Waite retaliated against him for exercising his First Amendment rights. Because Sanders did not plead sufficient factual allegations to support his claims, we affirm.

## I.

Sanders alleges that on January 27, 2017, while he was housed in the close management unit of the Florida State Prison, he witnessed the cell extraction team beat another inmate and signaled to a handheld camera that he had seen the beating.[1] Waite, who he says "used the cell extraction team" to abuse the inmate, told Sanders that because he "wanted to be a witness they had something for [him]." The next day, a prison officer came to Sanders's cell and told him that he was being placed on property restriction because he had his window covered with a sheet. When Sanders stated that he did not have anything covering his window, the officer responded that he was refusing, and another officer put a chain on his cell door to restrict how far it could open. Waite then came to his cell and asked if he would come out.

In response, Sanders told Waite that he was having a mental health emergency and swallowed a handful of Tegretol, an anti-seizure medication, in front of her. Waite stated that the pills were "just Ibuprofen" and walked away while Sanders remained in his cell. One of the officers then told Sanders that he was refusing a strip search while a second officer sprayed him with an unidentified chemical agent. Yet another officer grabbed Sanders's

---

[1] We "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff," and we liberally construe pro se pleadings. *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021); *Henley v. Payne*, 945 F.3d 1320, 1327 (11th Cir. 2019).

arm while another slammed the cell door on it repeatedly, all while a different officer sprayed Sanders in his throat.  Sanders exited his cell, and he fell to the ground because his knee had been slammed in the door and gave out.  The cell extraction team picked him up and carried him to the shower, where they ran his head into the shower wall.  After Sanders took a shower, the cell extraction team escorted him to the emergency medical area with handcuffs and shackles on.

Once Sanders was in the medical area, Waite told him that she would not place him on self-harm observation status.  Sanders alleges that Waite "had the cell extraction team block the window so the camera couldn't see what they were doing" and "had the cell extraction team" choke him, poke him in the eyes, punch him in the face, head, and ribs, and bend his fingers and his wrist, even though he was not resisting.  After pumping his stomach, Waite refused to place him in a cell in the medical area on self-harm observation status, which Sanders claims violated protocol.

Sanders alleges that Waite and two officers had him placed in a cell without sheets, a mat, or a blanket, and with no clothes except boxer shorts.  He claims that they chose that cell because "they knew the window was broken and did not close, and it was extremely cold outside."  In Sanders's telling, they left him there for three days in freezing temperatures, and he slept in a footlocker for warmth.  He attempted to report "staff abuse" several times, but Waite refused to file an incident report.  Sanders also says that the day after he was placed in the cold cell, he declared a medical

emergency and was treated for an injured shoulder and a cut on his head.  He does not allege that he complained of the temperature.

In the several months that followed, Sanders swallowed more pills in successive attempted overdoses, had his stomach pumped multiple times, and tried to hang himself in the shower.  He was treated by other nurses during that time.

On August 3, 2017, officers came to Sanders's cell and again told him that they were placing him on property restriction for covering his window, which Sanders insisted he did not have covered.  After an officer told him to submit to a strip search, Sanders again "swallowed a bunch of pills" and was taken to the medical area.  Braziel-Marshall "jammed" ammonia up his nose until his nose bled.  She and another nurse pumped his stomach until he started throwing up blood, and they refused to place him on self-harm observation status.  Sanders was taken out of the medical area to the shower, where prison staff "sprayed" him (presumably with chemical agents) when he tried to hang himself.  He was taken back to the medical area, and Braziel-Marshall gave him an emergency treatment order shot.  Sanders attempted to walk out, but an officer stopped him by stepping on his shackles and making him fall.  Braziel-Marshall then "jammed" ammonia into his nose again, and Sanders kicked her in the leg trying to get away.  Officers punched him and poked him in the eyes, and then carried him into a dark room where they continued to beat him, resulting in a "busted" mouth, lip, and right eye.  The eye injury led to a scar.

Sanders filed a pro se complaint under 42 U.S.C. § 1983 against 19 staff members at the Florida State Prison, including the warden, a captain, several sergeants, and other officers. His complaint also included claims against four nurses. The district court dismissed the claims against six officers and each of the four nurses, and Sanders filed a notice of appeal of the dismissal order relating to his claims against nurses Waite and Braziel-Marshall. Sanders then reached a settlement with the remaining defendants. The district court entered a final judgment dismissing the case with prejudice after the settling parties stipulated to a voluntary dismissal. We now address Sanders's appeal of the dismissal of his claims against Waite and Braziel-Marshall.

## II.

We review the district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo. *Cox v. Nobles*, 15 F.4th 1350, 1356 (11th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff cannot rely on mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quotations and brackets omitted).

### III.

We first address Sanders's claims against both nurses related to the medical treatment that they provided him. Sanders alleges that both Waite and Braziel-Marshall violated the Eighth Amendment by refusing to place him on self-harm observation status after he overdosed (Counts 11 and 13); observing him harm himself but not having him taken immediately to the medical area (Count 12); refusing to document his injuries (Count 16); and not treating his injuries (Count 17). He also claims that Braziel-Marshall violated the Eighth Amendment by pumping his stomach until he started throwing up blood (Counts 14 and 21).

The Eighth Amendment "prohibits deliberate indifference to serious medical needs of prisoners." *Hoffer v. Sec'y, Florida Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quotation omitted). To show deliberate indifference, the inmate must prove that prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Id.* (quotation omitted); *see also id.* at 1270 n.2 (explaining that "no matter how serious the negligence, conduct that can't fairly be characterized as *reckless*" is not sufficient to show deliberate indifference).

Deliberate indifference is "far more onerous than normal tort-based standards of conduct sounding in negligence." *Swain v. Junior*, 961 F.3d 1276, 1288 (11th Cir. 2020) (quotation omitted). Medical care violates the Eighth Amendment "only when it is so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation omitted). The Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Id.* at 1510 (quotation omitted). And "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of cruel and unusual punishment. *Id.* at 1505.

Sanders's factual allegations about his course of treatment do not support a conclusion that the nurses acted with deliberate indifference to his serious medical needs. Instead, Sanders relates that the nurses provided him with medical care upon his arrival in the medical area after his overdoses, with no suggestion that they are responsible for his transport to the medical area. He claims that Braziel-Marshall pumped his stomach until he vomited blood, but he does not provide facts to support his claim that she performed that treatment in a reckless manner.

As for the nurses' decision not to put him on self-harm observation status, Sanders claims that Waite instead chose to put him in a different cell where he was able to declare medical emergencies, and he was placed on self-harm observation status after he was stopped from hanging himself in the shower following his treatment by Braziel-Marshall. At most, these claims amount to an assertion of negligence or disagreement with the nurses' choice of treatment, so they fall short of deliberate indifference. *See Hoffer*, 973 F.3d at 1271; *Harris*, 941 F.2d at 1505.

Sanders alleges no facts that are relevant to his claims that the nurses failed to document his injuries. In any event, shortcomings in the nurses' documentation or their adherence to protocol amount to a claim that they violated prison regulations, not the Eighth Amendment. A "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). The district court correctly dismissed these Eighth Amendment claims.

## IV.

In a second set of claims, Sanders asserts that Waite and Braziel-Marshall are liable for the abuse that prison officers inflicted. He alleges that both nurses refused to file an incident report and alert the administration to the abuse (Count 15), that Braziel-Marshall (Count 18) and both nurses (Count 16) together with other staff covered up the abuse, and that they conspired with other defendants to cause him physical and emotional harm in violation of the Eighth Amendment (Count 7).[2]

A prison official violates the Eighth Amendment by failing to prevent harm "only when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (quotation

---

[2] Sanders alleges some staff violated his rights by failing to intervene and stop the acts of others, but those claims do not involve Waite or Braziel-Marshall.

omitted).   An inmate must show that "(1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation." *Id.* To prove a conspiracy under § 1983, "a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (quotations and brackets omitted).   The "linchpin for conspiracy is agreement, which presupposes communication." *Id.*

Sanders alleges that prison officers unnecessarily abused him in the nurses' presence while he was receiving medical care.   So we cannot agree with the district court that Sanders failed to suggest that the nurses "witnessed abusive events that warranted the filing of incident reports."   But the failure to file an incident report, even if prison regulations require doing so, does not by itself amount to a constitutional violation.   *See Taylor*, 221 F.3d at 1259.   Sanders does not allege sufficient facts to support the conclusion that the nurses were "subjectively aware that he faced a substantial risk of serious harm," or that their failure to file incident reports based on the abuse they witnessed was causally connected with any subsequent injury.   *Marbury v. Warden*, 936 F.3d 1227, 1238 (11th

Cir. 2019); *see also Valdes v. Crosby*, 450 F.3d 1231, 1236–37 (11th Cir. 2006).

Our case law does not indicate that medical personnel act with deliberate indifference when they fail to report instances of abuse by prison officers, especially absent any allegation of supervisory authority. *See, e.g.*, *Valdes*, 450 F.3d at 1236–37. Sanders does not allege any facts to support his claims that the nurses concealed the abuse he experienced by refusing to document his injuries or by falsifying documents, so the district court did not err by dismissing those claims.

And we agree that Sanders did not adequately support his claim that an agreement existed between the nurses and the prison officers to engage in abusive conduct. Although he once states that Waite and a prison officer "had the cell extraction team" block the window and abuse him in the medical area, he does not provide any facts suggesting that Waite had the authority to direct their actions. Because Sanders's factual allegations are not "enough to raise a right to relief above the speculative level," the district court correctly dismissed the conspiracy claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## V.

We next address the claims that Sanders asserts against Waite in particular. *First*, Sanders alleges that Waite knowingly placed him in a cell with extremely cold temperatures without clothes, sheets, or blankets (Count 4). We assess challenges to

conditions of confinement under the Eighth Amendment using a two-part analysis. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Under the first (objective) prong, an inmate must prove that the condition is "sufficiently serious to violate the Eighth Amendment" by showing, at the very least, that the condition "poses an unreasonable risk of serious damage to his future health or safety." *Id.* (quotation and brackets omitted).

And under the second (subjective) prong, the inmate must show that the prison official acted with deliberate indifference. *Id.* Again, negligence alone is not enough. The prison official can only be found liable for denying humane conditions of confinement if (1) the official "knows of and disregards an excessive risk to inmate health or safety"; (2) the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; and (3) the official draws that inference. *Id.* at 1289–90 (quotation omitted).

The district court reasoned that even if Sanders satisfied the first prong of the analysis by showing an objectively extreme condition, he failed to satisfy the subjective prong. We agree. Sanders did not provide facts supporting an inference that Waite knew of, but disregarded, a substantial risk of harm. His complaint rests largely on Waite's decision not to place him in a cell in the medical unit on self-harm observation status. To the extent he alleges that Waite had authority over cell assignment beyond that decision, he does not allege that Waite was responsible for monitoring his cell conditions or provide facts to support his claim

21-12622                Opinion of the Court                13

that she knew about the cell's cold temperature.  He also does not allege that he alerted her to his discomfort due to the cold temperature—even though he did seek medical attention for a shoulder injury and a cut on his head the day after he was placed in the cell.

*Second*, Sanders claims that Waite retaliated against him for exercising his First Amendment rights after he indicated to a camera that he witnessed the cell extraction team beat another inmate (Counts 5 and 8).[3]  To prevail on a First Amendment retaliation claim, an inmate must establish that (1) "his speech was constitutionally protected"; (2) "the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech"; and (3) "there is a causal relationship between the retaliatory action" and "the protected speech."  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quotation and brackets omitted); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  A plaintiff must establish that "the protected conduct was a motivating factor behind the harm" before the burden shifts to the defendant to show that she "would have taken the same action in the absence of the protected activity."  *Smith v. Florida Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).

---

[3] Sanders's complaint characterized these counts as Eighth Amendment violations, but the district court reframed them as First Amendment claims. Sanders did not challenge this recharacterization on appeal.

Although Sanders alleges retaliatory actions by prison officers—who he says unjustly put him on property restriction, sprayed him with chemical agents, and used excessive force during his Tegretol incident—Waite was not plausibly responsible for any of those acts. She was not even present for any except the first, when a captain issued the property restriction order in her presence. Consequently, these acts cannot form the basis of a § 1983 claim against her. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). What Sanders plausibly alleges is that she knew he should have been on observation status because of the Tegretol, but nevertheless declined to place him on that status (even though she ultimately provided treatment). Assuming that Sanders's speech was constitutionally protected and to the extent that any mistreatment occurred, Sanders does not plausibly allege that Waite's actions were taken in response to or were motivated by his speech.

*Third*, Sanders claims that Waite unlawfully sprayed him with chemical agents (Count 9). No factual allegation supports that claim: Sanders alleges that other defendants sprayed him, but not Waite. As the district court correctly concluded, Sanders "provides no facts suggesting" that Waite "had the authority to direct the extraction team to physically abuse Sanders." We agree that Sanders did not state a plausible claim against Waite.

\*    \*    \*

We **AFFIRM** the dismissal of Sanders's complaint against Waite and Braziel-Marshall.