[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10521
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-02062-SGC

ERIK HENDERSON,

Plaintiff-Appellant,

versus

CITY OF BIRMINGHAM, ALABAMA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 25, 2020)

Before MARTIN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Erik Henderson, an African-American police officer employed by the City

of Birmingham, Alabama (the "City"), brought suit claiming unlawful race

discrimination, retaliation, and hostile work environment.  The district court granted the City's motion to dismiss the complaint for failure to state a claim. Henderson appeals the dismissal order.  After careful consideration, we affirm.

**I.**

A. FACTUAL BACKGROUND

Henderson has worked as a police officer for the City since March 2007. His claims here arise from a series of events that occurred in 2017 and 2018.  We describe those events here, accepting all allegations in the complaint as true and drawing all inferences in Henderson's favor.  See Carruth v. Bentley, 942 F.3d 1047, 1053 (11th Cir. 2019).

1.

On January 9, 2017, Henderson was dispatched from his post at the North Precinct to assist someone who called to report a theft in Bessemer.  Earlier that day, Deputy Chief Cedric Stevens told the officers at the North Precinct that, due to a staff shortage, "the desk officer should handle any walk-in citizens needing a report."  Because Henderson was not the desk officer, he asked Sergeant Charlie Newfield whether he should respond to the Bessemer theft call, or if the desk officer should take the report.  Henderson says Newfield "got in his face and pointed his finger in a physically threatening manner and" told Henderson "in an angry and hostile tone" that he should respond to the call.  When Henderson asked

2

Newfield why he was talking to him in this way, Henderson says Newfield asked, "Do you want me to write you up?"

Henderson went to meet with the Bessemer complainant. While he was conducting the interview, Henderson noticed Newfield "was purposefully driving slowly by and observing Henderson's interaction with the citizen." In addition, in the middle of Henderson's taking the report, the citizen received a phone call from Birmingham Police Department Dispatch. Dispatch asked, among other questions, whether the citizen had any complaints. Henderson says this indicates the Police Department wanted "to elicit a citizen complaint against" him.

Later that day, Henderson received a "Letter of Counseling"—which he describes as "a form of formal discipline"—from Newfield for "unnecessary use of a police radio." Henderson says that, four days earlier, a Caucasian male officer "was told over the radio to stop going back and forth (arguing) with dispatch but was not written up nor did he receive any form of formal discipline." Henderson made a formal complaint of racial discrimination against Newfield to Peggy Polk, the City's Human Resources Director.

2.

At a later date, Deputy Chief Stevens issued a directive regarding procedures for "making and documenting a required business check to a local motel." When

3

Henderson arrived at the motel, he was instructed by Sergeant Newfield not to follow the procedures ordered by Stevens.

Henderson felt as if Newfield was "interfering with [his] job performance," "placing him in less desirable working conditions," and "micromanag[ing]" him. Henderson says similarly situated Caucasian officers were allowed to follow Stevens's order without interference from Newfield. Henderson asked Lieutenant Joe Roberts to tell Newfield to stop "harassing and placing Henderson in a hostile work environment." Roberts told Henderson he "did not have anything to complain about," but Roberts promised to speak with Newfield. Henderson also made another formal complaint to Polk, who told him approximately seven other African-American officers had made similar complaints.

3.

On July 15, 2017, an officer named Robert Lewis, Jr., overheard Sergeant Newfield discussing prior incidents on Henderson's criminal record with Sergeant Timothy Bell. Henderson complained to Lynn Shobe of the Alabama Criminal Justice Center about what he believed to be an unauthorized criminal-history search by Newfield.

4.

At some later point, the Birmingham Police Department's Internal Affairs Division had cleared Sergeant Newfield of the grievance charges Henderson filed.

4

Henderson notes in the complaint that Newfield's wife is a sergeant in Internal Affairs. Henderson then filed a grievance with the Personnel Board of Jefferson County (the "Personnel Board"), asserting Internal Affairs was not conducting a proper investigation into his claims. During this time, Newfield remained Henderson's sergeant.

On October 23, 2017, Internal Affairs called Henderson to ask him about a ring that Henderson's family was purchasing for him in celebration of his tenth anniversary on the force. Internal Affairs asked Henderson on multiple occasions to produce the ring for inspection, but he told them he did not have it in his possession yet. Henderson asserts the inquiry about the ring was retaliation for the previous complaints he filed about Newfield. Henderson filed another complaint with the Personnel Board.

5.

On January 16, 2018, Sergeant Newfield filed an internal complaint against Henderson "for being off his beat." Henderson asserts similarly situated Caucasian officers have performed duties off their beat without having complaints filed against them.

6.

Finally, on October 18, 2018, Henderson received a letter of verbal counseling for his productivity, even though the Birmingham Police Department

5

does not have monthly quota requirements.  He also says similarly situated Caucasian officers did not receive this letter.

## B.  PROCEDURAL HISTORY

Henderson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 21, 2018.  On September 12, 2018, the EEOC issued Henderson a notice of his right to sue regarding the charges he brought to the agency's attention.

Henderson timely filed suit against the City in federal court.  In his complaint, he asserts one count of race discrimination and one count of retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.  He also asserts one count of hostile work environment under Title VII.  The City moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Although the City said Henderson's entire complaint was due to be dismissed, the argument section of the City's motion solely addressed whether Henderson alleged a cognizable claim for hostile work environment.  Henderson opposed the motion, arguing with specificity that he had sufficiently pled all three grounds for relief.

---

[1] The City's motion also cited to Federal Rule of Civil Procedure 12(b)(1) but, as the district court observed, the motion made no argument that subject-matter jurisdiction is lacking, nor does the City make that assertion on appeal.

6

The district court granted the motion. The court noted that the City's motion to dismiss "contains substantive argument only with respect to one claim." Nevertheless, "in the interest of the efficient disposition of this action and because Henderson has responded based on the assumption the [City's] motion pertains to his complaint in its entirety," the court addressed "the plausibility of each of Henderson's claims." The court then explained why it did not believe Henderson could state a claim for relief on any ground in the complaint. As a result, and because Henderson did not request leave to amend, the court dismissed his complaint with prejudice. Henderson appealed, arguing that the district court erred in dismissing his claims under Title VII.[2]

## II.

We review <u>de novo</u> a district court's grant of a motion to dismiss for failure to state a claim. <u>Henley v. Payne</u>, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft</u>

---

[2] Henderson has not discussed his § 1981 claims on appeal, so he has abandoned them. <u>See</u> <u>Martin v. Fin. Asset Mgmt. Sys., Inc.</u>, 959 F.3d 1048, 1051 n.2 (11th Cir. 2020). This is of no moment, however, because the elements of a retaliation claim under Title VII and § 1981 are the same, <u>id.</u>, while § 1981's pleading standard for discrimination claims is at least as, if not more, restrictive than Title VII, <u>see</u> <u>Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media</u>, 589 U.S. ___, 140 S. Ct. 1009, 1017–19 (2020); <u>Martin</u>, 959 F.3d at 1051 n.2.

Henderson also does not challenge the district court's decision to dismiss his complaint with prejudice.

v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).  A plaintiff who brings claims under Title VII "need not allege facts sufficient to make out a classic prima facie case, but must simply provide enough factual matter to plausibly suggest intentional discrimination."  Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1253 (11th Cir. 2017).

A. DISCRIMINATION

A claim for racial discrimination in violation of Title VII should not be dismissed "when the well-pleaded factual allegations . . . plausibly suggest that the plaintiff suffered an adverse employment action due to intentional race discrimination."  See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam).

The district court dismissed Henderson's discrimination claim because (1) he failed to identify with specificity similarly situated individuals outside his protected class who were treated more favorably than he was; and (2) he did not identify an adverse employment action.  We agree with the district court that Henderson's claim fails because he cannot point to any adverse employment action he suffered.  We do not reach the other ground for dismissal of this claim.

An adverse employment action for purposes of Title VII discrimination is any action that has a negative impact on "the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) (quotation marks omitted), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006). Typically, an adverse employment action will "affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." Monaghan v. Worldpay US, Inc., 955 F.3d 855, 860 (11th Cir. 2020) (per curiam). Without an adverse employment action, a plaintiff cannot succeed on a Title VII claim that he was discriminated against based on disparate treatment. See id.

Henderson did not suffer a substantial adverse employment action. He says his discrimination claim can proceed because he was "subjected to formal discipline including being threatened with a write up, a letter of counseling, and verbal counseling," as well as having been "unfairly subjected to formal investigations." Br. of Appellant at 11 (citations omitted). But unfavorable performance reports and disciplinary memoranda are not sufficiently adverse if they did not cause the plaintiff "any present or foreseeable future economic injury." Davis, 245 F.3d at 1240. Similarly, an internal investigation—like any

9

alleged adverse employment action—is not sufficient to state a discrimination claim if it did not cause him any of the negative job consequences this Court discussed in Davis and Monaghan. Although Henderson alleges he was subjected to internal discipline and investigation, he does not say how, if at all, these actions affected the terms, conditions, or privileges of his employment. As a result, his disparate-treatment discrimination claim fails.

B. RETALIATION

Title VII prohibits retaliation "when an employee 'oppos[es] any practice made an unlawful employment practice by [Title VII]' or 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010) (alterations in original) (quoting 42 U.S.C. § 2000e-3(a)). In order to state a retaliation claim, an employee must plausibly allege he engaged in statutorily protected expression, he suffered a materially adverse employment action, and there was a causal link between the protected expression and adverse action. See id. "[R]etaliation is material if it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Monaghan, 955 F.3d at 857 (alteration adopted) (quotation marks omitted). In most cases, a jury will have to decide "whether anything more than the most petty and trivial actions against an employee" are sufficiently material. See Crawford v. Carroll, 529 F.3d 961, 973

10

n.13 (11th Cir. 2008). The employee "can demonstrate causation by showing close temporal proximity between the statutorily protected activity and the adverse employment action." Martin, 959 F.3d at 1054 (quotation marks omitted).

Henderson alleges he engaged in five protected activities: (1) the complaint he made against Sergeant Newfield in connection with the dispatch incident; (2) the complaints he made against Newfield in connection with the motel check incident; (3) the grievance he filed with the Personnel Board based on his claim the Police Department was not conducting a proper investigation into his complaints; (4) the grievance he filed with the Personnel Board regarding the ring investigation; and (5) his EEOC charge. See R. Doc. 12 at 18–19. He says the allegedly retaliatory actions include (1) the failure to remove Newfield as Henderson's supervisor, (2) various incidents of discipline, and (3) the ring investigation.

Henderson's first assertion of retaliation—that the City kept Newfield as his supervisor—fails because he has not alleged any facts that plausibly show the City took this action in retaliation for his protected activity. His second assertion of retaliation fails for lack of causation. The verbal warning and letter of counseling from Newfield both occurred on January 9, 2017, before any of Henderson's alleged protected activities took place. And Henderson received a letter of verbal counseling on October 18, 2018, approximately seven months after the most recent

11

protected activity (his EEOC charge). This extensive passage of time, without more, is not enough to satisfy Title VII's causation requirement. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (stating that "mere temporal proximity, without more, must be very close," and holding that a three-to-four month disparity, "in the absence of other evidence tending to show causation," is not enough (quotation marks omitted)).

The ring investigation presents a closer question. According to the complaint, Henderson filed his first grievance with the Personnel Board on September 21, 2017, and Internal Affairs started questioning him about the ring about a month later. The district court nevertheless rejected this ground for retaliation because the Internal Affairs investigation into Henderson's ring was not materially adverse. We are not sure the district court correctly held that whether an internal investigation can support a retaliation claim depends on the intrusiveness of the investigation. Cf. Campbell v. Haw. Dep't of Educ., 892 F.3d 1005, 1022 (9th Cir. 2018) ("We have previously indicated that merely investigating an employee—regardless of the outcome of that investigation—likely can support a claim for Title VII retaliation."). But we need not reach that question because we hold Henderson waived this basis for appeal by failing to include it in his briefing. Henderson's appeal brief mentions the ring investigation in the context of discrimination and hostile work environment—but not retaliation. See Br. of

12

Appellant at 11, 15; see also id. at 13 (discussing incidents of "targeted harassment and disparate discipline" to support retaliation claim without mentioning the ring investigation). Because Henderson does not "advanc[e] any arguments or cit[e] any authorities to establish" that the district court improperly dismissed his claim for retaliation premised on the ring investigation, he has abandoned this ground. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014).

## C. HOSTILE WORK ENVIRONMENT

To succeed on a hostile-work-environment claim, the plaintiff need not allege an adverse employment action like he would for a disparate-treatment claim. See Monaghan, 955 F.3d at 861. Instead, the plaintiff must prove "that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Fernandez v. Trees, Inc., 961 F.3d 1148, 1152 (11th Cir. 2020) (quoting Harris v. Forklift Sys, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993)).

Henderson says he meets this requirement based on Sergeant Newfield's interference with Henderson's patrol procedures, Newfield's search of Henderson's criminal history and discussing it with other officers, Internal Affairs' failure to conduct a proper investigation into Henderson's allegations of discrimination, and the ring investigation. Henderson does not explain how these

13

actions interfered with his job.  While harassment must be "both subjectively and objectively hostile" to show a hostile work environment, id. at 1153, Henderson's briefing does not explain how the acts alleged in his complaint rose to either of these levels.  We thus affirm the dismissal of Henderson's hostile-work-environment claim.

## III.

For these reasons, the district court's order dismissing this case with prejudice is **AFFIRMED**.