**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12175

Non-Argument Calendar

————————————————

NYKA O'CONNOR,

*Plaintiff-Appellant,*

*versus*

BARRY REDDISH,
   officially and/or individually, jointly and severally,
JULIE L. JONES,
   officially and/or individually, jointly and severally,
GANZALO ESPINO,
   officially and/or individually, jointly and severally,
ROBINSON,

MARK S. INCH,
   officially and/or individually, jointly and severally,

*Defendants-Appellees,*

CENTURION HEALTH,
   officially and/or individually, jointly and severally,
et al.,

*Defendants.*

—————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:17-cv-01007-BJD-JBT

—————————————

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

State prisoner Nyka O'Connor, proceeding pro se, filed a 42 U.S.C. § 1983 suit against ten defendants alleging violations of his constitutional rights under the First and Eighth Amendments, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The district court disposed of all of O'Connor's claims in stages—after a preliminary screening, after motions to dismiss, sua sponte, and on summary judgment. O'Connor appeals some of these adverse decisions. As to the claims that the district court dismissed, we agree with the court that all fail to state a claim. And as to the claims at summary judgment, we agree that the defendant is entitled to judgment as a matter of law. We accordingly affirm the district court in full.

**I**

To begin, O'Connor argues that the district court erred in dismissing or granting summary judgment against him on each of his Eighth Amendment deliberate-indifference claims. We first discuss the standards governing Eighth Amendment deliberate-

indifference claims generally, and then turn to O'Connor's individual claims against various defendants.

The Eighth Amendment governs the conditions under which prisoners are confined and the treatment that they receive in prison. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, the Eighth Amendment imposes duties on prison officials, who "must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation marks and citation omitted). To establish a claim of deliberate indifference, a plaintiff must first, as a threshold matter, show that he suffered an "objectively, sufficiently serious" deprivation. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (quotation marks omitted). Second, the plaintiff must show "that the defendant acted with subjective recklessness as used in the criminal law," showing "that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* And finally, even if the defendant actually knew about a substantial risk to the inmate, he cannot be held liable under the Eighth Amendment if he reasonably responded to that risk. *Id.*

As to an inmate's diet, prisons must provide basic life necessities, which includes adequate food. *Farmer*, 511 U.S. at 832. However, "[a] well-balanced meal, containing sufficient nutritional

value to preserve health, is all that is required." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

## A

O'Connor first argues that the district court erred in granting summary judgment to Dr. Espino on each of his Eighth Amendment claims against him.

We review de novo a district court's grant of summary judgment. *Stanley v. City of Sanford*, 83 F.4th 1333, 1337 (11th Cir. 2023).

"Summary judgment is proper if the movant shows that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law." *Id.* "We view the summary judgment record in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of the non-moving party." *Id.* In addition, we must credit the specific facts pleaded in a pro se plaintiff's sworn complaint when considering his opposition to summary judgment. *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

O'Connor contends that four actions taken by Espino rose to the level of deliberate indifference. The first three involved the denial of gastrointestinal medications. On May 8, 2017, Espino saw O'Connor, who was on the fifth day of a hunger strike. Espino declined to renew the medications that had been discontinued while O'Connor refused to eat. After O'Connor ended his hunger strike that same day, Espino didn't restart his medications for two

23-12175                Opinion of the Court                5

days. And at an appointment on June 14, Espino refused to pre-scribe O'Connor the specific medications that he requested.[1]

Even if Espino's decision not to administer medications cre-ated a substantial risk of serious harm—which itself is quite doubt-ful—O'Connor has presented no evidence that Espino was subjec-tively aware of that risk. *See Wade*, 106 F.4th at 1262. In a sworn declaration, Espino explained that, based on his evaluation of O'Connor and his medical opinion, O'Connor didn't suffer from any gastrointestinal conditions that necessitated medication. Es-pino also stated that he provided all care to O'Connor that he thought was medically necessary. O'Connor has offered no evi-dence that rebuts Espino's statements or shows that Espino know-ingly failed to treat a significant medical need. He instead empha-sizes that "Espino made a BAD JUDGEMENT." Appellant's Br. at 14. While that might suffice for a tort claim, "deliberate indiffer-ence is *not* a constitutionalized version of common-law negli-gence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). The district court, therefore, appropriately granted Es-pino summary judgment on the medication-based deliberate indif-ference claim.

---

[1] In his complaint, O'Connor also alleged that Espino acted with deliberate indifference during that the June 14 appointment by failing to order the ultra-sound that O'Connor sought. Because O'Connor failed to brief this claim on appeal, he has forfeited it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

The fourth action that O'Connor asserts was deliberately indifferent relates to his therapeutic diet. Espino refused to prescribe a bespoke diet and terminated O'Connor's existing therapeutic diet, which O'Connor contends violated his Eighth Amendment rights. O'Connor states that he was entitled to a non-standard therapeutic diet, such as a combined fat-intolerance and vegan diet, that would have accommodated both his health and religious needs.

But as with the medication-based deliberate-indifference claim, there's no record evidence that Espino was subjectively aware that terminating O'Connor's diet or refusing his request for a non-standard therapeutic diet would subject him to a substantial risk of serious harm. In his declaration, Espino stated that he believed that O'Connor's gastrointestinal issues had resolved and the specialized diet was no longer medical necessary. O'Connor musters no evidence that casts doubt on this statement.

Moreover, as a prison doctor, Espino had authority to prescribe only therapeutic diets; religious diets were beyond his purview. Put differently, Espino wasn't authorized to fashion the kind of hybrid therapeutic-religious diet that O'Connor requested. So, working within his remit, Espino applied his medical judgment and determined that a therapeutic diet—including the non-standard one requested by O'Connor—wasn't medically justified. That's precisely the kind of medical decision that doesn't constitute deliberate indifference. *See Hoffer*, 973 F.3d at 1273 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment fails to

support a claim of cruel and unusual punishment." (citation modified)).

*        *        *

In sum, O'Connor has failed to present any evidence that Espino subjectively knew that his decisions regarding O'Connor's medications and diet were substantially likely to cause his patient serious harm.  So we affirm the district court's grant of summary judgment in favor of Espino.

**B**

O'Connor next argues that the district court erred in sua sponte dismissing his Eighth Amendment claim against Nurse Robinson for failure to state a claim.

We review de novo a district court's sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), viewing the allegations in the complaint as true.  *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019).  The standards for a dismissal under that provision are the same as a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Id.*

To state a claim upon which relief may be granted (or to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation modified).

**1**

Here, the facts alleged by O'Connor about his interaction with Robinson don't state a deliberate-indifference claim. According to O'Connor, he told Robinson that he was suffering from "gastro pains [and] cramps, bloody toilet tissue with stools [and] large quantity of blood in [the] toilet." Am. Compl. at 12, Dkt. No. 57. Robinson allegedly saw the blood in the toilet and on the tissues. But instead of referring O'Connor to a doctor for further evaluation and treatment, Robinson allegedly told him that there was nothing wrong with him and that he had "waited until the weekend when nobody [was there] to complain." *Id.* So she handed O'Connor a sick-call request form and walked away.

As already explained, the deliberate-indifference standard requires that a prison official subjectively knew that her actions placed an inmate at substantial risk of serious harm. *Wade*, 106 F.4th at 1262. So to succeed on his claim against Robinson, O'Connor must allege facts that plausibly show that Robinson knew that it would seriously jeopardize O'Connor's health to give him a sick-call form instead of referring him for immediate care. But the facts he asserts don't support that conclusion. Robinson's comment that there was nothing wrong with O'Connor indicates that she didn't think he faced an imminent, serious health risk. Likewise, although her decision to give him a sick-call form could suggest subjective knowledge of *some* health issue, it doesn't indicate knowledge of a serious problem requiring prompt care. The facts alleged simply don't allow a factfinder to infer the subjective knowledge required

by *Wade*. We therefore affirm the district court's dismissal of O'Connor's deliberate indifference claim against Robinson.

### 2

Relatedly, O'Connor argues that the district court erred in denying his motion to file summary judgment against Robinson out of time. We review for abuse of discretion a district court's refusal to consider an untimely-filed motion or response. *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004).

O'Connor contends that three sets of circumstances beyond his control prevented him from filing his motion for summary judgment on time. First, he says that, due to violence and other prison conditions, the law library is sometimes closed. Second, he claims that mismanagement of the property room denied him access to grievances, sick-call forms, and other documents relevant to his case. Third, he states that his mental-health issues and the side effects of his psychiatric medications hindered his ability to promptly submit the motion. O'Connor argues that, in light of these circumstances, it was fundamentally unfair for the district court to bar him from filing an untimely motion for summary judgment.

We disagree. A district court has a range of options in managing its docket, including the option to "refus[e] to consider untimely filings." *Id*. at 864. And so long as the district court does not commit a clear error of judgment, we will affirm the district court's decision to do so. *Id*. at 863. Here, the court had previously denied O'Connor's requests to extend the relevant deadline, which passed

nearly four months before O'Connor submitted his untimely motion. All parties were aware that the time for filing motions for summary judgment had come and gone. The district court didn't abuse its discretion by sticking to the timeline it had previously communicated. Moreover, the fact that the court sua sponte dismissed O'Connor's deliberate indifference claim against Robinson in the same motion rendered a summary judgement motion pointless. We therefore affirm the district court's denial of O'Connor's motion to file an untimely motion for summary judgment.

## C

O'Connor next argues that the district court erred in dismissing his deliberate-indifference claims against Nurse Burgin, Nurse Johnson, and Dr. Lim for failure to state a claim. He argues that Nurses Burgin and Johnson did not have authority to make any mental-health assessments of O'Connor, and that their phone call to Dr. Lim describing his situation was therefore an Eighth Amendment violation. He also argues that Dr. Lim was required to perform his own medical assessment of O'Connor's mental-health status, and his failure to do so before ordering O'Connor to be placed on Self-Harm Observation Status constituted deliberate indifference.

Based on these allegations, O'Connor fails to state a claim on which relief can be granted under *Wade*. Because we're reviewing the court's dismissal of O'Connor's claim, we assume the veracity of O'Connor's allegations that Nurses Burgin and Johnson lacked the authority to make mental-health assessments and that

Dr. Kim was required to conduct his own examination before referring him for observation status, as O'Connor alleges. But those allegations are insufficient for a deliberate-indifference claim. O'Connor doesn't plausibly allege that the defendants, in reporting his hunger strike and placing him on observation status, subjectively knew that their actions created a substantial risk of serious harm to O'Connor. *See Wade*, 106 F.4th at 1262. Because O'Connor has failed to allege facts that, if true, would satisfy Wade's substantive-knowledge prong, we affirm the district court's dismissal of O'Connor's deliberate-indifference claims against Burgin, Johnson, and Kim.

## D

O'Connor next argues that the district court erred in dismissing his deliberate-indifference claims against the Secretary of the Florida Department of Corrections (FDOC) (Julie Jones and Mark Inch)[2] and Warden Reddish because he sufficiently pleaded policies, practices, and customs known and implemented by these defendants to support his Eighth Amendment claims. In particular, he alleges that the officials had polices, practices, and customs that led to the denial of his medications and requested diet, the termination of his existing therapeutic diet, and his diet's general inadequacy.

---

[2] Julie Jones is no longer the Secretary of FDOC. Under Fed. R. Civ. P. 25(d), the district court substituted Mark Inch, who succeeded Jones, as the defendant for O'Connor's official-capacity claims against the Secretary of FDOC. Thus, a reference to the Secretary of FDOC includes both Jones and Inch.

Relevant here, "[s]upervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022). Instead, "[p]laintiffs must [] allege that the supervisor [or official], through his own actions, violated the Constitution." *Id.* One way to do so is to allege that a "supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Id.*

Underlying this doctrine, of course, is the presupposition that the plaintiff has adequately pleaded the existence of a constitutional violation. If a subordinate didn't act unconstitutionally, there's nothing for which to hold the supervisor liable. As previously explained, Espino didn't violate O'Connor's Eighth Amendment rights when he refused to prescribe certain medications and determined that O'Connor didn't need a therapeutic diet. So Inch, Jones, and Reddish can't be held liable for Espino's actions on a theory of supervisory liability.

O'Connor's more general allegation that his diet is inadequate pursuant to policies, practices, or customs implemented by Jones, Inch, and Reddish similarly fails because he hasn't alleged a constitutional violation. O'Connor doesn't explain how his diet is deficient in the relevant part of his brief, but he elsewhere asserts that the Eighth Amendment guarantees him meals that contain the five food groups identified in the USDA MyPlate guidelines. He also claims that he is entitled to 2,600 calories daily, an amount that all of the prison's diet plans allegedly fall short of. But to meet their constitutional duty to "provide[] reasonably adequate food,"

prisons are required only to offer "well-balanced meal[s], containing sufficient nutritional value to preserve health." *Hamm*, 774 F.2d at 1575. We have never held that the adequacy of prison diets is governed by USDA guidelines. And O'Connor hasn't otherwise explained why the MyPlate standards or 2,600 daily calories are the Eighth Amendment baseline.

Because O'Connor hasn't plausibly alleged that (1) Espino's specific decisions about his medications and diet or (2) the prison's meal plans violated his Eighth Amendment rights, we affirm the district court's dismissal of O'Connor's Eighth Amendment deliberate indifference claims against Inch, Jones, and Reddish.[3]

## II

O'Connor also argues that the district court erred in granting summary judgment in favor of Espino as to his free-exercise claim because the district court erroneously resolved genuine disputes of material fact in favor of Espino. We first address his arguments as to his First Amendment free exercise claim, and then address his accompanying RLUIPA claim.

---

[3] One final note: We agree with the district court that dismissal with prejudice was appropriate. O'Connor protests that the court should have granted him leave to amend. But O'Connor already had one chance to amend his complaint, and, because his allegations provide no basis for a deliberate-indifference claim against these defendants, "a more carefully drafted complaint could not state a claim." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002). So "dismissal with prejudice [was] proper." *Id.*

### A

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.   To establish a free-exercise claim under the First Amendment, a plaintiff must show that the defendant "impermissibly burdened" the plaintiff's "sincerely held religious belief[]." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007).

Here, the district court concluded that Espino imposed no such burden on O'Connor's religious convictions.  The court found that Espino did not have the authority to prescribe diets to inmates to accommodate their religious beliefs, and, moreover, that he took steps within his power to enable O'Connor to seek a religiously compliant diet from the proper officials.

O'Connor argues on appeal that the district court's finding about the scope of Espino's authority was erroneous, asserting that Espino could have prescribed him a non-standard therapeutic diet for his health and religious beliefs.  O'Connor cites two FDOC rules in support.  First is Rule 33-204.002, which defines terms related to correctional food services.  This rule, however, doesn't support O'Connor's argument.  It defines "Therapeutic diet" as "a diet that is prescribed for medical reasons and is designed to meet the requirements of a given medical condition." Fla. Admin. Code § 33-204.002.  Notably absent from that definition is any mention of religious accommodations, and the rule's explanation that therapeutic diets are "prescribed for medical reasons" indicates that

Espino couldn't prescribe a therapeutic diet for a non-medical purpose. *Id.*

O'Connor also cites FDOC Procedure No. 401.009, which is entitled "Prescribed Therapeutic Diets." This policy adopts the same definition of "therapeutic diet" as Rule 33-204.002, and it likewise doesn't mention religious diets. Because these two policies constitute the only evidence O'Connor raises on appeal to rebut the district court's finding that Espino could not prescribe diets to accommodate inmates' religious beliefs, O'Connor hasn't shown a genuine issue of material fact regarding Espino's authority to prescribe religious diets.

Moreover, the actions that Espino took made it easier, not harder, for O'Connor to procure a religiously compliant diet. Prison regulations stipulate that an inmate receiving a therapeutic diet is not eligible for a religious diet. So, when Espino terminated O'Connor's therapeutic diet—which he believed was no longer medically necessary—he removed a barrier preventing O'Connor from requesting a religious meal plan. Contrary to O'Connor's claims, Espino's actions alleviated the burden on his faith.

In sum, O'Connor fails to identify any evidence that creates a genuine issue of material fact as to whether Espino impermissibly burdened his religious exercise. We therefore affirm the district court's grant of summary judgment to Espino on this claim.

**B**

We now turn to O'Connor's RLUIPA claim. When an appellant fails to properly challenge on appeal the grounds on which

the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed. *Sapuppo*, 739 F.3d at 680–81. Further, "[i]f an argument is not fully briefed . . . to the Circuit Court, evaluating its merits would be improper both because the appellants may control the issues they raise on appeal, and because the appellee would have no opportunity to respond to it." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1203 (11th Cir. 2024) (quoting *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004)).

To begin, O'Connor withdrew his RLUIPA claim against Espino in his personal capacity. This left only O'Connor's RLUIPA claim against Espino in his official capacity. And on appeal, O'Connor addresses his RLUIPA claim only in passing. Importantly, he never addresses the grounds on which the district court based its dismissal with respect to this claim. *See Sapuppo*, 739 F.3d at 680–81. The district court found that, to the extent Espino is an agent of FDOC, the claims against him in his official capacity are redundant of the claims against the Secretary. The district court then dismissed O'Connor's official-capacity RLUIPA claim against Espino on that ground. Since O'Connor never addresses this ground (which was the only ground on which the district court relied) in his initial brief, he has abandoned any challenge to the RLUIPA dismissal against Espino. *Id.* We thus affirm the district court.

## III

O'Connor argues next on appeal that the district court erred in granting summary judgment to Espino on his First Amendment retaliation claim.

To prevail on a First Amendment retaliation claim, the plaintiff must show that "he engaged in protected speech, that officials retaliated against him, an adverse effect on his protected speech, and a causal relationship between the retaliation and the adverse effect." *Smart v. England*, 93 F.4th 1283, 1289 (11th Cir. 2024). "A prisoner may state a claim under the First Amendment when he alleges that he was punished for filing a grievance concerning the conditions of his imprisonment." *Id.* (citation modified).

"In determining whether [the plaintiff] has established a causal connection between his complaints and grievances and the adverse actions he suffered," we ask whether the defendant was "subjectively motivated to discipline" the inmate plaintiff because of his complaints. *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023) (quotations omitted). And to survive a motion for summary judgment, the plaintiff must produce evidence "beyond his own conclusory allegations" that "suggest[s] that" the defendant's actions "were motivated by a retaliatory animus." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995).

O'Connor claims that Espino took two actions to retaliate against him for filing grievances: terminating his therapeutic diet and, at a later appointment, failing to provide certain care. First,

O'Connor claims that Espino terminated his diet because O'Connor filed a grievance stating that the diet was insufficient. He claims that Espino ended the diet, rather than modifying it to exclude cheese, because of retaliatory animus. But Espino stated that he ended the diet because he believed that O'Connor didn't suffer from any gastrointestinal maladies that necessitated such a diet. And, as already explained, Espino's termination of the diet allowed O'Connor to seek a religious diet, something that Espino couldn't himself prescribe. O'Connor has presented no evidence that suggests Espino's true motivation was to retaliate, rather than to provide medically appropriate care and enable O'Connor to request a religious diet elsewhere. *See Harris*, 65 F.3d at 916.

O'Connor also alleges that Espino retaliated against him for a grievance he filed on June 14, 2017, by refusing to provide appropriate care at an appointment later that same day. O'Connor stated in an affidavit that he told Espino at the appointment that he had filed the grievance earlier that day. But O'Connor acknowledged that Espino told him that his medical issues were just perceived ailments *before* O'Connor told Espino about the grievance. Additionally, Espino submitted a sworn affidavit stating that he provided O'Connor at this appointment with all of the treatment that he found to be medically necessary.

O'Connor's strongest evidence is Espino's statement—recounted in O'Connor's affidavit—that he wouldn't provide treatment until seeing the grievance and attached court order. But by the time he made that statement, Espino had already determined

that no treatment was medically necessary. *See O'Bryant v. Finch*, 637 F.3d 1207, 1217 (11th Cir. 2011) ("[I]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on his motion for summary judgment . . . ." (citation modified)). So O'Connor hasn't established that Espino didn't provide the requested care *because of* O'Connor's complaints. *See Williams*, 64 F.4th at 1193.

In sum, because O'Connor failed to present evidence sufficient to create a genuine issue as to whether Espino acted with retaliatory animus in (1) terminating his therapeutic diet and (2) failing to provide the desired care at the June 17 appointment, we affirm the district court's grant of summary judgment to Espino on this claim.

**IV**

O'Connor argues next on appeal that the district court erred in dismissing his RLUIPA and First Amendment free-exercise claims against Jones, Inch, and Reddish.

RLUIPA prohibits governments from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); 42 U.S.C. § 2000cc-1(a).

A plaintiff stating a claim under RLUIPA bears the initial burden of showing that the policy he challenges "implicates his religious exercise" and that his requested accommodation is "sincerely based on a religious belief." *Holt*, 574 U.S. at 360–61. He also must show that the aggrieved policy "substantially burden[s] [his] exercise of religion." *Id.* at 361.

Because O'Connor's claims challenged here were dismissed for failure to state a claim, this Court looks to his complaint to determine whether he stated a claim for relief that is plausible on its face. *Newbauer*, 26 F.4th at 934. In O'Connor's amended complaint, he alleged that the Secretary and the Warden had a "widespread [and] persistent policy, practice [and] custom" which was the driving force behind the denial of his requested religiously compliant diet. He claimed that the defendants' policy and custom was "to deny said Non-Standard Therapeutic Diet" for his health and religion. He further alleged that if prison doctors were to have prescribed him the diet he requested, that diet "wouldn't restrict [his] right to religion."

What O'Connor failed to do, however, is point to a specific policy of the Secretary or the Warden that caused prison doctors to prescribe him the diet of which he complains or refuse to prescribe him the diet he requested.[4] He merely states that the Secretary and

---

[4] To the extent that O'Connor references the vegan meal plan as a policy that violated his rights under RLUIPA, he fails to explain Jones, Inch, or Reddish's role in promulgating or enforcing the policy. That's fatal to his claim—supervisory liability requires a "causal connection between [the supervisor's]

23-12175               Opinion of the Court                    21

the Warden had a policy, practice, and custom to deny him his desired diet.  That kind of conclusory allegation, however, is insufficient to state a claim.  *See id.*  We affirm the district court's dismissal of O'Connor's RLUIPA claims against Jones, Inch, and Reddish.

O'Connor's free-exercise claim fails for the same reason:  In his complaint, he identified no specific policy, practice, or custom that infringed upon his First Amendment rights.  So we affirm the district court's dismissal of his free-exercise claim against Jones, Inch, and Reddish.

★    ★    ★

For the reasons discussed, we conclude that the district court correctly rejected all of O'Connor's claims against Espino, Robinson, and Jones, Inch, and Reddish.

**AFFIRMED.**

---

actions and the alleged constitutional deprivation." *Ingram*, 30 F.4th at 1254 (citation modified).